UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-Civ-23610-COOKE

WEST SUNRISE DEVELOPMENT CORP.,

    Appellant,

vs.

BRUCE JAY SMOLER,

    Appellee.

_____/

## ORDER AFFIRMING BANKRUPTCY COURT ORDER

Appellant West Sunrise Development Corporation ("Appellant" or "West Sunrise") claims Appellee Bruce Jay Smoler ("Appellee" or "Smoler") concealed and misrepresented the parties and interests involved in a real property sale. Appellant raised its concerns in an adversary proceeding during Appellee's Chapter 7 bankruptcy case. It now appeals the bankruptcy court's Order Granting Defendant's Motion for Summary Final Judgment. *See* Notice of Appeal, ECF No. 1. For the reasons stated below, I affirm the ruling of the bankruptcy court.

### I.    BACKGROUND

After a multi-year ownership dispute over Appellant's shopping center asset, a state court appointed a liquidation receiver ("Receiver") to sell the property on behalf of Appellant. *See* Appellant Br. 2 – 3, ECF No. 11. Prior to the Receiver appointment, the Estate of James M. Christenson, represented by Appellee, entered into a contract to sell the shopping center to Isaac Tordjman ("Tordjman") for $4.25 million. *Id.* 3. On March 13, 2006, the state court directed the Receiver to approve this earlier agreement if it was the only offer received and the terms and conditions remained identical, save for updating the contract as between the Receiver and Tordjman. *Id.* 4; *see also* App. 5, Exh. C, ECF No. 19. The Receiver and Tordjman entered into a purchase and sale agreement on March 17, 2006 ("Tordjman Agreement"). Appellant Br. 2 – 3. Smoler represented Tordjman and was also appointed escrow agent between the parties. Appellant Br. 5.

1

The Tordjman Agreement permitted Tordjman to assign his rights therein with the Receiver's consent, and limited to entities that Tordjman wholly owned or was an affiliate he controlled. App. 6, Exh. D, ECF No. 20. After an unsuccessful bid to purchase the Appellant's property following the state court's approval of the Tordjman Agreement, *see* App. 7, Exh. K, ECF No. 21, Francis Jacob ("Jacob") approached Smoler about Tordjman's willingness to sell the property to him at a profit after Tordjman completed his sale with the Receiver. Answer Br. 7, ECF No. 18. The parties agreed to do so once Tordjman received the property. *Id.* On May 11, 2006, Smoler, Tordjman, and another individual, Bruce Cohen, formed TCS Property Holdings, LLC ("TCS") for the purpose of purchasing the Appellant's property. *Id.* According to Smoler's affidavit, Tordjman was in exclusive control of TCS. *Id.* 7 – 8. Tordjman and Jacob agreed that their future sale would occur through a transfer of Tordjman's interests in TCS, not through a warranty deed. *Id.* 8.

On the day of closing the Tordjman Agreement, May 19, 2006, Smoler informed the Receiver that TCS was an appropriate assignee of Tordjman. Appellant Br. 7. The closing was completed thereafter. *Id.* Later that same day, members of TCS resigned their positions and membership interests, including the recently-purchased property, and transferred them to Jacob and Ben Jacobi ("Jacobi") for $4.875 million, $625,000 more than what Tordjman paid for the property. *Id.* 8; Answer Br. 18.

Appellant believes Tordjman served as a straw purchaser for Jacob and Jacobi all along, and that Smoler breached his duties as an escrow agent by not fully disclosing to the Receiver the people and benefits involved. It questions Smoler's representations that Tordjman alone made $200,000 worth of deposits into Smoler's trust account for the purchase of Appellant's property. It also doubts Smoler's assertion that Tordjman was fully prepared to purchase and close on Appellant's property. And it questions whether Tordjman was in control of TCS at the time of closing since Tordjman and Jacob had already agreed and drafted agreements that transferred Tordjman's interest in TCS to Jacob.

For its part, Appellee argues he was under no duty to disclose the other parties and interests involved since he was an escrow agent in an arms length transaction. In addition, the transfer of TCS's interests to Jacob was not effectuated until after Tordjman had closed his deal with the Receiver. He also states that Appellant has not provided any contradictory record evidence that refutes Smoler's affidavit or Tordjman's deposition about the deal.

## II.    LEGAL STANDARD

A federal district court reviews a bankruptcy court's summary judgment order *de novo*. *In re Optical Techs., Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001). The Federal Rules of Bankruptcy Procedure incorporate the summary judgment standard found in Federal Rule of Civil Procedure 56. *See* Fed. R. Bankr. Pro. 7056, 9015. As such, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), when reviewing "the pleadings, depositions, answers to interrogatories, and admissions on file, [and] affidavits." *In re Optical Techs., Inc.*, 246 F.3d at 1334. While all evidence and reasonable inferences are made in favor of the nonmoving party, *id.*, the "moving party is entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *In re Delco Oil, Inc.*, 599 F.3d 1255, 1257 – 58 (11th Cir. 2010) (internal quotation marks omitted). What is more, "the nonmoving party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.    DISCUSSION

Appellee's role and disclosures as an escrow agent are relevant here. As a fiduciary to the contracting parties, an escrow agent has legal obligations to understand the terms of the agreement, to "exercise reasonable skill and ordinary diligence" in disbursing the escrowed funds according to the agreement's terms, and to disclose all material facts therein. *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1376 (S.D. Fla. 2011). Further, the bankruptcy code excepts discharge for money or property obtained through fraud. *See* 11 U.S.C. § 523(a)(2)(A). Appellant must prove by a preponderance of the evidence that Appellee "made a false statement with the intent to deceive them, and [it] justifiably relied upon such falsehood resulting in damages" to Appellant. *In re Lorenzo*, 434 B.R. 695, 705 (Bankr. M.D. Fla. 2010). Appellant has failed to show that Appellee violated his fiduciary duties or that he made any false material statements in this case.

The Tordjman Agreement did not infuse additional duties upon Smoler. In fact, the agreement confirms that Smoler's duties as an escrow agent were "purely ministerial in

nature," and that he would incur liability only in cases of "willful misconduct or gross negligence." App. 6, Exh. D at 18. There is no dispute that Smoler properly fulfilled his escrow duties of collecting and disbursing the funds according to the Tordjman Agreement. Appellant fails to cite to any record evidence or legal rules that suggest Smoler had a duty to inform the Receiver of Tordjman's financing efforts (beyond Tordjman making the agreed-upon deposit payments), Tordjman's talks with Jacob, or Tordjman and Smoler's conversations about creating a limited liability company to purchase the property. That Smoler was Tordjman's attorney and later developed a financial interest in the property sale due to his membership with TCS does not alter Smoler's duties as an escrow agent.

There is also no record evidence to suggest Smoler made any false statements about material facts to the Receiver during the purchase of and closing on Appellant's property.[1] For one, Tordjman's security deposits totaling $200,000 were properly deposited and accounted for into Appellee's trust account. *See* Answer Br. 21–22, 24. Further, Smoler's statement that Tordjman was ready to close on the property is uncontroverted by the record evidence. Appellee received assurances from Tordjman and, most tellingly, the deal was consummated as the Receiver obtained the full value of the sale as negotiated between the parties.

What is more, Appellee's representations during the property closing that TCS served as an appropriate assignee were correct. First, TCS was an affiliate as defined under the Tordjman Agreement, since Tordjman exercised control over TCS and its members' activities. *See id.* 24 – 29. While Tordjman signed all relevant documents the day before the Tordjman Agreement closing, including assigning his TCS interest to Jacob, Smoler privately maintained these materials and officially delivered them at Jacob's closing—the closing that took place after the Tordjman Agreement was completed. *Id.* Thus, Smoler's statements during the closing of the Tordjman Agreement were not false since Tordjman had not officially resigned his position from TCS at that point.

---

[1] I do not specifically consider an Affidavit from Ian Gardner as part of this record evidence. The bankruptcy court previously struck Gardner's Affidavit, and Appellant did not appeal that order in this case. Even so, the Affidavit does little more than broadly support Appellant's statements in response to Smoler's motion for summary judgment in the bankruptcy case. *See* 14-01689-LMI, ECF No. 42.

Appellant believes the circumstances surrounding the Tordjman Agreement reveal Appellee's scheme to manipulate the sale and achieve financial gain. But there is little record evidence, beyond Appellant's speculation, that lead to this conclusion. To be sure, Appellee's position as both Tordjman's attorney and escrow agent to the entire agreement is unique. And Tordjman, Smoler, and Cohen all stood to financially benefit from a subsequent sale, or flip, of the property with Jacob and Jacobi. But Smoler properly fulfilled his escrow agent duties and Appellant received the money owed to it under the Tordjman Agreement. In short, the Tordjman Agreement was properly executed and Appellant has not shown a genuine dispute of any material facts.

## IV.     CONCLUSION

For the foregoing reasons, the Order Granting Defendant's Motion for Summary Final Judgment is **AFFIRMED**. All pending motions, if any, are **DENIED** *as moot*. The Clerk is directed to **TRANSMIT** notice of this Order to the bankruptcy court in accordance with all relevant rules and procedures and is further directed to **CLOSE** this case.

**DONE and ORDERED** in Chambers at Miami, Florida, this 26th day of September 2016.

_____
MARCIA G. COOKE
United States District Judge

*Copies furnished to:*
Counsel of record